Nott, J.,
delivered the opinion of the court:
The salaries of postmasters in the United States are not specifically fixed by law, and from the extended and varying character of the postal system they must be left in a greater or less degree to the discretion of some executive officer, who at the present time is the Postmaster-General.
When this discretion is absolute, or when, in the language of the Supreme Court, (United States v. Wright, 11 Wall. R., 648,) Congress have constituted the Postmaster-General “ the sole judge to determine” ‘‘the manner and extent” of the compensation to be allowed, the postmaster, although a salaried officer, is without j udicial redress. But when the law does “go further and prescribe rules to govern the action of the Postmaster-General,” or does set specific bounds to the discretion which he may exercise, then postmasters, like other salaried officers, are entitled to sue for and recover whatever the law declares they shall be paid. In other words, discretion is to be upheld whenever it is confided to an executive officer, but discretion is not to be extended by the judiciary to matters over which ib has not been extended by Congress; nor does the existence of discretion as to a portion of the compensation which may or may not be allowed to an officer defeat a right of action as to another portion which has been legislatively determined, and by positive law is made fixed and certain.
The Revised Post-Office Act, 1872, (17 Stat. L., 283, 295, §§ 82, 84,) contemplates and provides for two classes of re-adjustments of salaries. The first of these, the biennial re-adjustment, is general and mandatory. The statute is imperative that the salaries of postmasters shall he re-adjusted by the Postmaster-General once in two years,” and the basis and method of re-adjustment are so clearly defined by statute thaft the duty of re-adjusting involves no discretion and is merely ministerial. As to such salaries, they are as certain after the proper returns have been filed as though the amount were named in the statute; and as to them the neglect or refusal of the Postmaster-General to readjust cannot defeat a postmaster’s right to receive the salary which the law designates as his legal compensation.
*233 The second class of re-adjustments is special and discretionary. The power to re-adjust salaries “in special cases” is not confined to biennial periods, but is to be exercised by the Postmaster-General 11 as much oftener as he may deem expedient.” (§ 82.) The frequency with which the power should be exercised necessarily depends upon the magnitude and rapidity of the changes in the revenue of an office. Discretion as to the frequency necessarily involves discretion as to the cause. In leaving it to the Postmaster-General to determine the times when a special re-adjustment of a single salary might be advisable, Congress impliedly left it to him to determine -whether the fluctuation of revenue was sufficient to demand his special intervention. A subsequent section of the statute (§ 84) contains a proviso, “That in cases of extraordinary increase or decrease in the business of any post-office, the Postmaster-General may adjust the salary” so as to take effect from the beginning of a preceding instead of from the beginning of a succeeding quarter. But this proviso is manifestly a mere exception to the general requirement of the same section, that all changes of salary shall take effect subsequently to the readjustment. Moreover, if it were not so, the proviso establishes no rule or standard for determining what is “ an extraordinary increase or decrease in the business of any post-office,” and the judiciary has no more right to apply its- discretion in the one case than in the other. Discretion here is necessary to determine what is an extraordinary increase or decrease, and that discretion- is evidently confided to the Postmaster-General.
There is, however, a remaining question in the case springing out of the general or biennial re-adjustment of salaries.
On the 1st June, 1872, the Postmaster General made his biennial re-adjustment, to go into operation at the beginning of the ensuing quarter, viz, on the 1st July. At that time the law as it stood limited the amount of box-rents which should be awarded to a postmaster in the computation of his salary to $2,000 a year, (Act 3d March, 1847, 9 Stat. L., 188, § 13,) with a like limitation as to other commissions and emoluments, (Act 22d June, 1854, 10 Stat. L., 298.) There is no question but that the re-adjustment at that time, as the law then stood, was correctly computed, and that this claimant’s salary would have been precisely what the Postmaster-General assigned to him for the ensuing biennial period from the 1st July, if no subse *234 quent statutory change were made. But on the 8th. June the Iievised Post-Office Act became a law, and it repealed the limitation which restricted box-rents to $2,000 a year. Furthermore, the entry of the biennial re-adjustment on the books of the post-office bears date on the 1st July when it went into effect, and not on the 1st June when it was actually made. The claimant is understood to insist that the date of the record controls — that it was in legal effect an adjustment subsequent to the Act 8th June, and consequently should have been made according to its provisions.
As to the last point involved, it cannot be maintained. The journal of the Post-Office Department, in which the re-adjustments of salaries are recorded, is not a judicial record to which is to be ascribed absolute verity. A number of things had to be done under the act of 1864 before a re-adjustment took effect, and then it only took effect at the beginning of the succeeding quarter. Whether the enrollment bore date when the re-adjustment was made or when it took effect could not prejudice the claimants rights and cannot add to them. He had no control over the Post-Office records, and can neither be held responsible for nor derive an advantage from their errors.
The question which then arises is whether the act of 1872 required are-adjustment of salaries which should supersede the re-adjustment -of June 1st, and at the same time embrace the biennial period beginning on the 1st July, 1872.
The statute is imperative that there shall be biennial re-adjustments, but is silent as to the time when they shall be niade. As to the preceding re-adjustment under the act óf 1864 nothing whatever is said. The statute neither provides that it shall be set aside, nor declares that it 'shall stand unaffected by the new provisions regulating re-adjustments.
The effect of the statute, then, was to leave the time when the first bienuial re-adjustment should be made to the discretion of the Postmaster-General, with the limitation that it should take place within two years from the passage of the act. The purpose of the act, moreover, manifestly was to perfect the existing system and not to overturn or unsettle it. In some cases, doubtless, an earlier action might have been beneficial to some postmasters, but in others it might have been prejudicial. Let it be supposed that the conditions of the present case were reversed •, that the Postmaster-General had set aside his *235 former re-adjustment; .tliat be had required subsequent returns to be made by postmasters; and that the claimant were one of those postmasters whose salaries would be diminished by a subsequent re-adjustment. Might he not then urge with greater propriety that Congress never intended to unsettle what had been done by the Department; that the new revision of the statute was to be in harmony with the existing system; and that the premature action of the Postmaster-General was a needless intermeddling with an established system, substantially retroactive in its effect, and destructive of rights equitably acquired”!
The judgment of the court is that the petition be dismissed.